UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CONSTANTIN LAND TRUST                    CIVIL ACTION

VERSUS                                   NO. 12-259

EPIC DIVING AND MARINE                   MAGISTRATE JUDGE
SERVICES, LLC                            JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS

This action for damages by a land trust against a limited liability company was
removed to this court solely on the basis of diversity jurisdiction.  Defendant impleaded
another limited liability company as a third-party defendant, which then brought
counterclaims against both the original plaintiff and the defendant.  When the plaintiff
filed its own counterclaim against the third-party defendant/plaintiff-in-counterclaim, the
court sua sponte decided to examine its subject matter jurisdiction.  The parties were
ordered to file sworn affidavits or declarations under penalty of perjury that would
establish the citizenship of the parties for purposes of diversity jurisdiction.

All parties consented to proceed before a United States Magistrate Judge pursuant
to 28 U.S.C. § 636(c).  Record Doc. Nos. 11, 40.

Having considered the complaint, as amended, the third-party demand, the
counterclaims, the submissions of the parties and the applicable law, and for the
following reasons, IT IS ORDERED that this matter is remanded to the Seventeenth

Judicial District Court for the Parish of Lafourche, State of Louisiana, because the court lacks subject matter jurisdiction.

IT IS FURTHER ORDERED that Constantin's motion to dismiss, motion for more definite statement and motion to strike Pitre's counterclaims, Record Doc. No. 48, is DISMISSED AS MOOT.

## I.   PROCEDURAL BACKGROUND

"Constantin Land Trust , a Louisiana Trust, represented herein through its duly authorized Trustee, James Constantin," brought this action against EPIC Diving and Marine Services, LLC ("EPIC") in the Seventeenth Judicial District Court for the Parish of Lafourche, State of Louisiana.  Petition for Damages, Record Doc. No. 1-1 at p. 3. Constantin Land Trust ("Constantin") alleges that EPIC trespassed[1] on a 2.35 acre tract of land known as the Texaco Dock, which Constantin owns.  Constantin claims that EPIC used, occupied, performed construction and dumped unspecified materials on plaintiff's property without any legal right or authorization, and that EPIC's use, occupancy and dumping caused damage to Constantin.  Id. at p. 4.

EPIC removed the action to this court based solely on diversity jurisdiction.  As to jurisdiction, defendant's Notice of Removal alleges:

---

[1]Constantin brought a claim for conversion under Louisiana state law, which this court dismissed on defendant's Rule 12(b)(6) motion because the allegations of the petition relate solely to immovable property, while the tort of conversion applies to moveable property only.  Record Doc. No. 20.

2.

This controversy is between citizens of different states.   Upon information and belief, Plaintiff, Constantin Land Trust, is a Louisiana trust represented by its duly authorized trustee, James Constantin, who, upon information and belief, is an individual domiciled and residing in Oklahoma.

3.

Defendant EPIC is a citizen of states other than that of the Plaintiff. EPIC is a limited liability company whose sole member is TETRA Applied Technologies, LLC.  The sole member of TETRA Applied Technologies, LLC is TETRA Applied Holding Company, which is a Delaware corporation with its principal place of business in The Woodlands, Texas.

Record Doc. No. 1, at pp. 1-2.  Constantin never moved to remand the action to state court.

Constantin amended its complaint to add allegations that (a) EPIC knew that plaintiff had leased the Texaco Dock property to a third party, Pitre Industries, LLC ("Pitre"), and that the lease required Constantin's approval of any sublease; (b) EPIC willfully or negligently colluded with Pitre to circumvent that lease provision and entered into an unauthorized sublease with Pitre; and (c) EPIC's vessels and crew members negligently used, struck and damaged "bulkheads and pilings during navigation and/or while docking."  Record Doc. No. 17 at pp. 2-4.

Without opposition from Constantin, EPIC received leave to file a "Third Party Demand and Rule 14(c) Tender" against Pitre.  The third-party complaint states that Pitre Industries, LLC, is "a Louisiana limited liability company, who is authorized to do and doing business within this district, and can be served through its registered agent, Elmo

J. Pitre, III, at 18814 West Main, Galliano, Louisiana," and that "[j]urisdiction over this Third Party Demand exists under diversity jurisdiction, 28 U.S.C. § 1332, and maritime jurisdiction, 28 U.S.C. § 1333." Record Doc. No. 33 at p. 2. EPIC alleges that it was one of many customers of Pitre who used the Texaco Dock and that it had no knowledge of the lease between Pitre and Constantin. After explaining that Constantin has sued Pitre separately in state court for causes of action arising out of several leases between those two entities, including the Texaco Dock lease, EPIC asserts that Constantin

> has alleged that EPIC[2] is liable for both (1) maritime tort and property damages, and (2) lease damages arising from Pitre's obligations to perform and pay CLT [Constantin] under its Texaco Dock lease with CLT. CLT seeks the same damages from EPIC in this suit. Thus, CLT is trying to collect the same tort and lease damages under state and maritime law from both EPIC and Pitre.

Id. at p. 3. EPIC alleges that any damages Constantin suffered with respect to the Texaco Dock property are the responsibility of Pitre or other third parties who used the Texaco Dock. Therefore, if EPIC is held liable to Constantin in the instant lawsuit, EPIC seeks contribution or indemnity from Pitre. EPIC states that it "has made amicable demand on Pitre. EPIC also tenders Pitre to [Constantin] under Rule 14(c) of the Federal Rules of Civil Procedure." Id. at p. 3.

Pitre answered the Third Party Demand and asserted counterclaims against EPIC and Constantin, alleging both diversity and maritime jurisdiction. Record Doc. No. 42.

---

[2]This appears to be a typographical error and probably should read "Pitre."

4

Pitre's voluminous counterclaims arise out of its written lease of the Texaco Dock property from Constantin, other written and oral agreements regarding several other properties owned by Constantin, and an alleged settlement agreement between these two parties regarding their entire relationship.

Constantin then filed a motion to dismiss, for a more definite statement and to strike Pitre's counterclaims.  Record Doc. No. 48.  Constantin argues that Pitre's counterclaims against it destroyed diversity jurisdiction because Constantin "is a Louisiana Trust and Pitre is a Louisiana limited liability company.  Thus, this Court has jurisdiction only over the allegations relating to the Texaco Dock and EPIC's use of the facility[, which are compulsory counterclaims].  None of the other allegations are relevant to the cause asserted herein.  All the other allegations must be dismissed" because they are permissive counterclaims over which the court lacks subject matter jurisdiction.  Record Doc. No. 48-1 at p. 6.

Without opposition from EPIC or Pitre, Constantin received leave to file a counterclaim against Pitre.  Plaintiff's counterclaim asserts that Pitre breached its lease with Constantin regarding the Texaco Dock property by entering into a sublease with EPIC and that Pitre is responsible for any physical property damage caused by Pitre or any third parties whom it allowed to have access to the property.  Record Doc. No. 54. Constantin does not make any claims against Pitre that do not arise out plaintiff's own

5

allegations against EPIC.  The counterclaim does not allege any basis for subject matter jurisdiction.

The court decided sua sponte to examine its subject matter jurisdiction.  The court ordered all parties to "file in the record affidavits sworn under oath or penalty of perjury, specifically identifying the full names of <u>all</u> of their respective members, trustees and beneficiaries and stating the place of domicile (for individuals) and state of incorporation and principal place of business for corporations of each of those persons or entities for purposes of diversity jurisdiction."  Record Doc. No. 56 at p. 2.  The order noted that the parties in this case are a land trust and two limited liability companies, and provided citations to cases that address the citizenship requirements of those types of entities.

In response, EPIC filed a memorandum of law regarding subject matter jurisdiction and the affidavit of its president, Edwin H. Goldwin.  Record Doc. No. 64. Goldwin affirms that EPIC is a limited liability company organized under Delaware law, with its principal place of business in Texas.  The sole member and owner of EPIC is TETRA Applied Technologies, LLC, which is also a limited liability company organized under Delaware law with its principal place of business in Texas.  The sole member of TETRA Applied Technologies, LLC is TETRA Applied Holding Company, which again is a Delaware corporation with its principal place of business in Texas.  Record Doc.

No. 64-1.  EPIC argues in its memorandum that the court has maritime jurisdiction, even if diversity jurisdiction does not exist.

Pitre submitted the affidavit of Elmo Jay Pitre, III, which only partially complies with the court's order.  Mr. Pitre avers that he and Tammy Pitre are the members of Pitre Industries, LLC.  Although he states that the "domicile of Pitre Industries, LLC is Golden Meadow, Louisiana," Record Doc. No. 67, he does not provide the domicile of either himself or Tammy Pitre, which is the information that the court ordered and that the case law cited in the order establishes is necessary to determine the citizenship of a limited liability company.  Pitre also filed a memorandum of law, in which it argues that the court has admiralty, federal question and supplemental jurisdiction over the parties' causes of action.  Record Doc. No. 68.

Constantin submitted the affidavit of Jim Constantin, Jr., the managing trustee of Constantin Land Trust, "a Louisiana Trust," who provides the names and addresses of "[t]he individual trustees."  Record Doc. No. 63 at p. 1.  The addresses of the five named trustees are in Kansas, Texas, Louisiana and Oklahoma.  Mr. Constantin does not say that these are plaintiff's only trustees or that the listed addresses are the domiciles of the trustees for citizenship purposes.  He also does not name any beneficiaries of the trust. This affidavit only partially complies with the court's order.

II.     SUA SPONTE ANALYSIS OF SUBJECT MATTER JURISDICTION

A.      This Court's Subject Matter Jurisdiction Is Limited

It is axiomatic that this court is one of limited jurisdiction and must always be satisfied of its own subject matter jurisdiction.   Subject matter jurisdiction "is nonwaivable and delimits federal-court power . . . .   Subject-matter limitations on federal jurisdiction . . . keep the federal courts within the bounds the Constitution and Congress have prescribed.   Accordingly, subject-matter delineations must be policed by the courts on their own initiative even at the highest level." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."));[3] accord Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009).   Even if "neither party raises the issue of subject matter jurisdiction, this court must consider jurisdiction sua sponte." Equal Emp't Opportunity Comm'n v. Agro Distrib., LLC, 555 F.3d 462, 467 (5th Cir. 2009).

To resolve questions of subject matter jurisdiction, the court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's

_____

[3]The quoted language is the current version of Rule 12(h)(3), which was amended in 2007 to make changes that are "stylistic only," Fed. R. Civ. P. 12, official comment (2007), rather than the language that existed in 1999 when the Supreme Court cited the rule.

resolution of disputed facts." <u>Walch v. Adjutant Gen.'s Dep't</u>, 533 F.3d 289, 293 (5th Cir. 2008).   Thus, when reviewing jurisdictional factual allegations, the court may consider testimony and affidavits outside the pleadings.  <u>Tatum v. United States</u>, No. 11-506, 2011 WL 3205279, at *1 (E.D. La. July 27, 2011), <u>vacated on other grounds</u>, 465 F. App'x 313 (5th Cir. 2012) (citing <u>Oaxaca v. Roscoe</u>, 641 F.2d 386, 391 (5th Cir. 1981); <u>Paterson v. Weinberger</u>, 644 F.2d 521, 523 (5th Cir. 1981)); <u>McKinley ex rel. D.M. v. Astrue</u>, No. 10-321, 2010 WL 2836140, at *1 (E.D. La. July 16, 2010) (citing <u>Garcia v. Copenhaver, Bell & Assocs.</u>, 104 F.3d 1256, 1261 (11th Cir. 1997); <u>Clark v. Tarrant County</u>, 798 F.2d 736, 741 (5th Cir. 1986)).

      B.    <u>Diversity of Citizenship in a Removed Case</u>

Civil actions originally filed in state court may be removed to a federal court that would have original jurisdiction.  28 U.S.C. § 1441(a).  Actions are removable based on diversity jurisdiction when 28 U.S.C.§ 1332(a) is satisfied, which requires at least $75,000 in controversy and complete diversity of citizenship among all properly joined parties.  28 U.S.C. § 1441(b).  Complete diversity "mean[s] that a federal court may not exercise diversity jurisdiction if any one of the plaintiffs is a citizen of the same state as any one of the defendants."  <u>Menendez v. Wal-Mart Stores, Inc.</u>, 364 F. App'x 62, 65 (5th Cir. 2010); <u>accord</u> <u>Lincoln Prop. Co. v. Roche</u>, 546 U.S. 81, 89 (2005).

      The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper.  To determine whether jurisdiction is

present for removal, we consider the claims in the state court petition as
they existed at the time of removal.  Any ambiguities are construed against
removal because the removal statute should be strictly construed in favor
of remand.

Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002) (citing

28 U.S.C. § 1441(a)) (additional citations omitted); accord Barker v. Hercules Offshore,

Inc., 706 F.3d 680, 684-85 (5th Cir. 2013); Gash v. Hartford Accident & Indem. Co., 491

F.3d 278, 281-82 (5th Cir. 2007).

     C.    Citizenship of a Limited Liability Company

     EPIC is a limited liability company.  Although the Supreme Court has not ruled

on how to determine the citizenship of a limited liability company, the appeals courts

have uniformly held that, "like limited partnerships and other unincorporated associations

or entities, the citizenship of a LLC is determined by the citizenship of all of its

members."  Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1080 (5th Cir. 2008)

(citing Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990)) (additional citations

omitted) (emphasis added).

> A limited liability company is a citizen of **every** state in which any member
> of the company is a citizen, and "the citizenship of a LLC is determined by
> the citizenship of all of its members."  Therefore, the diversity analysis for
> a limited liability company requires a determination of the citizenship of
> every member of the company.  If any one of the members is not diverse,
> the limited liability company is not diverse.

Benjamin v. Multi-Chem Group, L.L.C., No. 6:11-cv-01819, 2012 WL 3548060, at *2 (W.D. La. July 16, 2012), report & recommendation adopted, 2012 WL 3549835 (W.D. La. Aug. 16, 2012) (quoting Harvey, 542 F.3d at 1080) (citing Grupo Dataflux v. Atlans Global Grp., L.P., 541 U.S. 567, 585 n.1 (2004); Carden, 494 U.S. at 196) (bold emphasis added).

EPIC's membership thus determines its citizenship. EPIC's evidence establishes that its sole member is another limited liability company, TETRA Applied Technologies, LLC, whose sole member is TETRA Applied Holding Company, which is a Delaware corporation with its principal place of business in Texas. "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). EPIC, therefore, is a citizen of Delaware and Texas.

EPIC invoked this court's diversity jurisdiction by alleging that Constantin "is a Louisiana trust represented by its duly authorized trustee, James Constantin, who, upon information and belief, is an individual domiciled and residing in Oklahoma." Notice of Removal, Record Doc. No. 1, at p. 1 (emphasis added). "For diversity jurisdiction purposes, citizenship in a particular state is established when a natural person is 1) a citizen of the United States, and 2) a domiciliary of that state." Orleans Shoring, LLC

11

v. Patterson, No. 10-3380, 2011 WL 900760, at *2 (E.D. La. Mar. 11, 2011) (McNamara, J.) (citing Coury v. Prot, 85 F.3d 244, 249 (5th Cir. 1996)).

EPIC did not specify in its removal notice whether it contends that plaintiff is a citizen of Louisiana, Oklahoma, or both, but either of those states is diverse from EPIC's citizenship in Delaware and Texas. The removal notice on its face alleged complete diversity of citizenship. The court now questions whether EPIC's jurisdictional allegations are adequate when plaintiff is a trust.

If Constantin's citizenship is deemed to be only in Louisiana and/or Oklahoma, complete diversity existed at the time of removal. However, Constantin's recently filed affidavit provides addresses in Texas for two of its five trustees. I presume that Texas is the domicile of these two trustees. If Constantin's citizenship is deemed to include the citizenship of all of its trustees, two of whom are domiciled in the same state as EPIC, the court never had diversity jurisdiction over the removed action, which must be remanded to state court. 28 U.S.C. § 1447(c). Thus, I must determine the citizenship of a trust for purposes of diversity jurisdiction.

D.    Citizenship of a Trust

The Supreme Court has not ruled on how to determine the citizenship of a trust, and the Fifth Circuit has not rendered a definitive, reasoned ruling on the issue. See Berry v. Chrysler Grp., LLC, No. H-12-1492, 2013 WL 416218, at *6 (S.D. Tex. Jan. 31,

2013) (explaining why the Fifth Circuit's brief, footnoted statement in <u>Mullins v. TestAm., Inc.</u>, 564 F.3d 386, 397 n.6 (5th Cir. 2009), that the "citizenship of a trust is that of a trustee," which did <u>not</u> discuss or even cite <u>Carden</u>, 494 U.S. at 187-96, cannot be reconciled with the reasoning of <u>Carden</u> or the opinions from other courts that have analyzed and applied <u>Carden</u> when the citizenship of a trust was at issue).

Other federal courts in many recent, well-reasoned opinions have extensively analyzed <u>Carden</u>, which held that the citizenship of limited partners had to be taken into account to determine diversity of citizenship in an action involving a limited partnership, and a predecessor Supreme Court case, <u>Navarro Sav. Ass'n v. Lee</u>, 446 U.S. 458 (1980), which the <u>Mullins</u> court cited but did not discuss.  These courts held that the citizenship of a trust is that of <u>all</u> of its "members," defined as its trustees <u>and</u> beneficiaries.  <u>Mills 2011 LLC v. Synovus Bank,</u> No. 12 Civ. 6158(AJN), 2013 WL 443541, at *4 (S.D.N.Y. Feb. 5, 2013) (citing <u>Ravenswood Inv. Co. v. Avalon Corr. Servs.</u>, 651 F.3d 1219, 1221-22 & n.1 (10th Cir. 2011); <u>Emerald Investors Trust v. Gaunt Parsippany Partners</u>, 492 F.3d 192, 205 (3d Cir. 2007); <u>Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 292 F.3d 1334, 1337-40 (11th Cir. 2002), <u>overruled in part on other grounds by</u> <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit</u>, 547 U.S. 71, 89 (2006), <u>as recognized in</u> <u>Instituto De Prevision Militar v. Merrill Lynch</u>, 546 F.3d 1340, 1348 (11th Cir. 2008); <u>Lenon v. St. Paul Mercury Ins. Co.</u>, 136 F.3d 1365, 1371 (10th Cir. 1998); <u>RTC</u>

13

Commercial Assets Trust 1995-NP3-1 v. Phoenix Bond & Indem. Co., 169 F.3d 448,

451-52 (7th Cir. 1999); Ibanez v. U.S. Bank Nat'l Ass'n, No. 11-11808-RGS, 2011 U.S.

Dist. LEXIS 136632, at *5-6 (D. Mass. Nov. 29, 2011); Bergeron v. Ridgewood Elec.

Power Trust V, No. 07-10622-RGS, 2007 U.S. Dist. LEXIS 48555, at *6-9 (D. Mass.

July 5, 2007); Mecklenburg Cnty. v. Time Warner Entm't–Advance/Newhouse P'ship,

No. 3:05cv333, 2010 U.S. Dist. LEXIS 6215, at *10-11 (W.D.N.C. Jan. 26, 2010));

Berry, 2013 WL 416218, at *6-7 (citing Carden, 494 U.S. at 195; Emerald Investors

Trust, 492 F.3d at 205; Riley, 292 F.3d at 1337; Yueh-Lan Wang ex rel. Wong v. New

Mighty U.S. Trust, 841 F. Supp. 2d 198, 204-05 (D.D.C. 2012);  Oak Den Farm, LLC

v. Travelers Indem. Co., No. 06-7205, 2008 WL 115179, at *5-6 (E.D. La. Jan.9, 2008));

see also Fagan Enters., Inc. v. Constantin Land Trust, No. 98-333, 1998 WL 195984, at

*1 (E.D. La. Apr. 22, 1998) (Clement, J.) (citing Carden, 494 U.S. at 195; Elliott v.

Tilton, 62 F.3d 725, 728 (5th Cir. 1995); Riverside Mem. Mausoleum, Inc. v. Umet

Trust, 581 F.2d 62, 65 (3rd Cir. 1978)) ("the citizenship of a land trust is determined by

looking to the citizenship of its members, including its investors or beneficiaries and not

simply its trustees").

      However, I need not decide whether to apply the Fifth Circuit's brief, conclusory

statement in Mullins that the "citizenship of a trust is that of a trustee" or the rule of the

other cases cited in the preceding paragraph that a trust's citizenship is that of all of its

"members."  Two of Constantin's trustees appear to be domiciled in Texas.  Thus, regardless whether this court looks to the citizenship of Constantin's trustees only or to that of all its trustees <u>and</u> beneficiaries, Constantin's citizenship is non-diverse from EPIC.[4]

This court lacked diversity jurisdiction over Constantin's complaint against EPIC at the time of removal.  EPIC asserted no other basis of removal jurisdiction.  Therefore, Constantin's complaint, as amended, must be remanded to the Seventeenth Judicial District Court for the Parish of Lafourche, State of Louisiana.

E.      EPIC's Third-Party Demand

EPIC asserted a third-party demand against Pitre for contribution and indemnity, alleging both diversity and maritime jurisdiction.  Record Doc. No. 33.  When a federal court has original subject matter jurisdiction over plaintiff's complaint, the court has supplemental jurisdiction over a third-party demand under 28 U.S.C. § 1367 and "there need be no independent jurisdictional basis for such a claim."  6 Miller & Kane, <u>Federal Practice & Procedure</u> § 1444 at 377-78 (West 2010).  "The standard in the statute is that the additional claims must be so related to the other claims in the action over which the court has original jurisdiction that they form part of the same case or controversy."  <u>Id.</u>

---

[4]For the same reason, the court need not require Constantin to remedy its failure to identify its beneficiaries as ordered, because the citizenship of the beneficiaries will make no difference to the outcome in this case.

at 386.  However, "when there is no subject-matter jurisdiction over the original action between plaintiff and defendant, it cannot be created by adding a third-party claim over which there is jurisdiction."  Id. at 381.

EPIC's third-party demand against Pitre, whether asserted under Rule 14(a) or 14(c) for an admiralty or maritime claim, is wholly derivative of and dependent upon Constantin's complaint against EPIC.  See id. at 375 ("defendant's right of action against the third-party under Rule 14 must be based on the same aggregate of facts that constitute plaintiff's claim"); id. § 1465 at 563 ("Rule 14(c)(1) provides that defendant may implead a party 'who may be wholly or partly liable–either to the plaintiff or to the third-party plaintiff . . . .'  This language specifically preserves defendant's traditional right [in admiralty] to demand judgment directly in favor of plaintiff and against the third-party defendant."); id. at 578 ("the third-party complaint must satisfy the Rule 14(c)(1) requirement that the claim arise from the same transaction or occurrence or series of transactions or occurrences alleged by plaintiff").

This court has no subject matter jurisdiction over Constantin's complaint against EPIC, which is the sole basis for EPIC's third-party demand against Pitre.  In the absence of a jurisdictionally viable main demand, there can be no supplemental jurisdiction over the third-party demand.  Therefore, EPIC's third-party demand is also remanded to state court.

I next address whether the court has subject matter jurisdiction over (1) Pitre's counterclaim against EPIC, which is allegedly based on both diversity and maritime jurisdiction; (2) Pitre's counterclaim against Constantin, also allegedly based on diversity and maritime jurisdiction; and (3) Constantin's counterclaim against Pitre, for which Constantin has not asserted any jurisdictional basis.

F.      Pitre's Counterclaim Against EPIC

As to third-party defendant Pitre's counterclaim against third-party plaintiff EPIC, the affidavit of Elmo Jay Pitre, III, establishes that the limited liability company's two members reside in Louisiana, which appears to be their domicile.  Pitre is therefore deemed to be a Louisiana citizen and is completely diverse from EPIC, which is a citizen of Texas and Delaware.  Regardless whether maritime jurisdiction also applies, the court has diversity jurisdiction over Pitre's counterclaim against EPIC.

However, Pitre's counterclaim against EPIC does not actually assert any "claim" for relief.  Pitre merely denies that it is responsible for any of EPIC's actions that may have caused damage to Constantin.  Pitre seeks a judgment that EPIC, not Pitre, be held liable for any damages proven by plaintiff, and Pitre seeks dismissal of EPIC's third-party demand against it based on its denial of liability.

A pleading that states a claim for relief must contain:
. . .
(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

17

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

A claim is  "[a] demand for money, property, or a legal remedy to which one asserts a right." Black's Law Dictionary (9th ed. 2009).  A counterclaim is a " claim for relief asserted against an opposing party after an original claim has been made." Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  In the absence of any affirmative claim for relief, Pitre does not state a counterclaim that is cognizable in this court under any theory of subject matter jurisdiction.

Pitre's "counterclaim" against EPIC, which in reality is just a denial of EPIC's third-party demand, is inextricable from the third-party demand and from plaintiff's complaint.  Thus, the court will remand Pitre's counterclaim against EPIC to the state court along with plaintiff's complaint and EPIC's third-party demand.

  G. Counterclaims Between Pitre and Constantin

    1. No maritime contract is involved.

One of Constantin's trustees and both of Pitre's members reside in Louisiana, which the court assumes is their domicile.  Diversity jurisdiction does not exist as to the counterclaims between Pitre and Constantin because both are citizens of Louisiana.

However, Pitre argues in its jurisdictional memorandum that the court has federal question jurisdiction under 28 U.S.C. § 1331 and maritime jurisdiction under 28 U.S.C. § 1333 over its counterclaims against Constantin.  Record Doc. No. 68.  Constantin concedes in its motion to dismiss Pitre's counterclaims that Pitre's claims arising out of the lease of the Texaco Dock property enjoy supplemental jurisdiction under 28 U.S.C. § 1367(a), because they are based on the same nucleus of operative fact as Constantin's original and amended complaint, but plaintiff argues that the remainder of Pitre's counterclaims have no independent basis of federal jurisdiction.

Pitre's allegations against Constantin arise out of several written and oral agreements regarding real property, including the Texaco Dock property and other tracts, some of which front on navigable waterways, and an alleged settlement agreement between these parties to resolve issues arising out of those earlier agreements.  Pitre alleges that, before entering the various leases, Constantin knew the nature of Pitre's business, was aware of Pitre's intended use of the Texaco Dock property and knew that Pitre did not own any vessels.  Pitre alleges that it provided various services to improve the properties, including hardening and elevating the land to prevent erosion and flooding, installing pilings and repairing bulkheads and docks.  Pitre further asserts that the parties entered into a settlement agreement on or about August 4, 2010, which modified the terms of their leases, included "the use of all bulkheaded dock area" on the

waterfront properties, settled all claims regarding the use of the properties in connection with the BP Deepwater Horizon offshore oil spill cleanup, resolved issues regarding the existence of any sublease with EPIC and other third parties, gave Pitre a right of first refusal on leasing all property "around the turning basin if and when the existing leases [with other lessees] are terminated" and agreed to terminate the lease as to a portion of the Texaco Dock property so that it could be leased to another tenant, with Pitre retaining a right of first refusal to re-lease the property when the other tenant's lease terminated. All of Pitre's causes of action relate to alleged breaches of these various agreements. Record Doc. No. 42.

Constantin's counterclaim against Pitre asserts that Pitre breached its lease with Constantin regarding the Texaco Dock property only by entering into a sublease with EPIC and that Pitre is responsible for "physical property damage caused by Pitre or any third parties to which it allowed access" to the property.  Record Doc. No. 54.

Pitre now contends in its jurisdictional memorandum that some of its customers who used the property that Pitre had leased from Constantin responded to the Deepwater Horizon oil spill, so that its counterclaims have a jurisdictional basis in both admiralty and the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349.  Pitre also argues that the court has subject matter jurisdiction under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.

§ 9607, and/or the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C.§ 6972 because Constantin alleges in the instant case that EPIC "dumped materials" on Constantin's property and Constantin also alleged in its separate state court litigation against Pitre that EPIC or Pitre dumped "hazardous" materials.

Pitre's argument that the court has federal question jurisdiction is unavailing. Pitre did not plead any such jurisdictional basis in its counterclaims against either EPIC or Constantin, relying instead on assertions of diversity and maritime jurisdiction. Pitre has not amended its counterclaim to allege federal question jurisdiction and the court will not permit it to do so by way of this memorandum.

I have carefully reviewed the claims and counterclaims, and there are no allegations anywhere in the instant case about "hazardous" waste dumping or about work on the Outer Continental Shelf by the parties in this case. An allegation of "hazardous" material dumping in Constantin's separate state court litigation against Pitre can have no effect on the allegations actually made in this court, on which jurisdiction must be founded. Constantin has made no allegation here about any hazardous materials. Despite Pitre's attempt to re-characterize the factual allegations of Constantin's complaint, amended complaint and counterclaim in this court and of Pitre's own counterclaim, on their face none of these pleadings alleges any cause of action or jurisdiction under CERCLA, RCRA or OCSLA.

As to maritime jurisdiction, Pitre contends in its jurisdictional memorandum that all of the leased properties face a navigable waterway or extension.  Pitre asserts that, because it has contracts with EPIC and other customers that involve the provision of water, supplies, loading, repairing, docking and mooring of vessels on a navigable waterway, its claims against Constantin arise from maritime contracts.  I find that the agreements between Pitre and Constantin at issue in this case are not maritime contracts.

> To determine admiralty jurisdiction in a contract action such as this, we do not consider merely whether a ship or vessel was involved but rather examine "the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions."  The Supreme Court has instructed that the boundaries of admiralty jurisdiction are "conceptual rather than spatial," and that because "the fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce," a court should focus its inquiry on whether maritime commerce is the principal objective of the contract.

St. Paul Fire & Marine Ins. Co. v. Board of Comm'rs, 418 F. App'x 305, 30-08 (5th Cir. 2011) (quoting Norfolk S. Ry. v. Kirby, 543 U.S. 14, 23, 24, 25 (2004)).

"Simply because [a contract] relates to boats and marinas does not necessarily imply that it is a 'maritime contract'" under the analysis mandated by the Supreme Court in Kirby.  N.H. Ins. Co. v. Home Sav. & Loan Co., 581 F.3d 420, 424 (6th Cir. 2009) (citing Kirby, 543 U.S. at 23, 25; Sisson v. Ruby, 497 U.S. 358, 367 (1990)).  "A maritime contract is one relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment. However,

22

[t]he mere fact that a ship is involved will not bring the cause within the jurisdiction of the admiralty court." Gulf Coast Shell & Aggregate LP v. Newlin, 623 F.3d 235, 240 (5th Cir. 2010) (quotations and citations omitted).

The court's "inquiry into whether a contractual dispute falls within our maritime jurisdiction must focus on whether the contract's primary objective' has an 'essentially maritime nature' and relates to 'maritime commerce.' . . .  In conducting this inquiry, Kirby also requires us to consider the contract as a whole." N.H. Ins. Co., 581 F.3d at 424 (quoting Kirby, 543 U.S. at 24-25); accord Royal Ins. Co. v. Orient Overseas Container Line Ltd., 525 F.3d 409, 419 (6th Cir. 2008).

In the instant case, neither the location of the leased properties on a navigable waterway nor the presence of a dock, which Pitre's customers apparently used under separate agreements with Pitre, is determinative.  The court looks to the lease between Constantin and Pitre regarding the Texaco Dock property, which was signed in November 2005 and is attached to Constantin's memorandum in support of its motion to dismiss Pitre's counterclaim.  Record Doc. No. 48-2, Plaintiff's Exh. 1.

The lease does not mention any particular dock, vessel or maritime commerce. Reading the 24-paragraph agreement as a whole, its primary objective is the lease of a described piece of immovable property, not a dock, for a term of 10 years with options to renew for two additional 10-year terms.  Id. at p. 1 and ¶ 1.  The contract allows Pitre

to construct improvements on the land at its own expense, requires Pitre to pay taxes on the improvements and provides that the improvements shall revert to the lessor, Constantin, at lease termination.  Id. at ¶¶ 5, 6.

A few provisions of the lease address certain effects of the property's location on a waterway.  "The parties acknowledge the concern about erosion of the premises" and agree that Pitre shall repair, maintain and, if necessary, replace existing bulkheads.  Id. at ¶ 5a.  The lessee is required to "comply with all governmental safety, pollution and conservation regulations when engaged in activity on the property," including regulations of the United States Army Corps of Engineers.  Id. at ¶ 14.  Pitre's rights are subject to regulations of the Greater Lafourche Port Commission, including "navigation rules and regulations."  Id.  The lessee has "the right to dredge all waterways fronting the leased premises, subject to the rules and regulations of the Greater Lafourche Port Commission, the U.S. Corps of Engineers" and other government agencies, provided that the "dredging shall not 'silt up' the Sinclair Canal."  Pitre is granted the right to deposit the dredged spoils on the leased tract and on adjoining land owned by Constantin.

Under Louisiana law, this is a typical "ground lease."

"A ground lease is generally a long-term lease (for a term of seldom less than 35 and up to 99 years) of land in which the lessee is obligated to make improvements on the land.  The improvements are owned or become owned by the lessee, although their ownership often reverts to the lessor at the end of the lease."

Tetra Techs., Inc. v. La. Fruit Co., 252 F. App'x. 639, 643 (5th Cir. 2007) (quoting Peter

S. Title, Louisiana Practice Series: Louisiana Real Estate Transactions § 18.33 (2006)).

Nothing about this lease indicates that its primary objective is maritime commerce.

Analogous case law supports a finding that the lease between Pitre and Constantin

regarding the Texaco Dock property is not a maritime contract.  Judge Zainey of this

court recently held that the court lacked admiralty jurisdiction in a breach of contract

case concerning a lease of land fronting on a navigable canal.  Although the lease limited

use of dock space on the property for "dockage of [the lessee Schlumberger's] vessels

and the loading and unloading of the crews and their necessary clothing, gear, and

provisions," the court found that it was not a maritime contract under Kirby.  Jaspriza v.

Schlumberger Tech. Corp., No. 10-1859, 2010 WL 4879442, at *1 (E.D. La. Nov. 23,

2010).  Judge Zainey explained:

> The Fifth Circuit has yet to take up the issue of whether contracts for
> the lease of dock space fall under federal admiralty jurisdiction.  Circuits
> that have encountered the question have held that the lease of a wharf or
> dock does not fall within admiralty jurisdiction unless the contract specifies
> a particular vessel.  See, e.g. Royal Ins. Co. v. Pier 39 Ltd., 738 F.2d 1035,
> 1037-38 (9th Cir. 1984) ("Wharfage contracts are maritime if wharfage is
> provided to a specific vessel."); Goodman v. 1973 26 Foot Trojan Vessel,
> 859 F.2d 71, 73 (8th Cir. 1988) ("Contracts, such as this one, providing
> wharfage to a particular vessel are maritime.").  Similarly, several federal
> district courts have refused to extend admiralty jurisdiction to cases
> involving the lease of wharf space.  Proleride Transp. Sys., Inc. v. Union
> Carbide Corp., 498 F. Supp. 680 (D. Mass. 1980); Gowanus Storage Co.
> v. U.S. Shipping Bd. Emer. Fleet Corp., 271 F. 528, 530 (E.D.N.Y. 1921)

> ("[A] lease of a wharf is not a maritime contract on which may be maintained an action in admiralty for the collection of rent.").

Id.

In Jaspriza, Schlumberger, the lessee who had removed the case to federal court, argued that the contract's limitation on "use of the dock to elements essential to navigation renders the contract maritime in nature." Id. at *3. The court found this contractual limitation insufficient to establish the Fifth Circuit's requirement that

> a maritime contract have a direct link to the operation of a ship, transportation of a vessel, or maritime employment. A direct link to the operation of a ship in the context of a dock lease requires that the contract specify a particular vessel. Absent a provision in the contract specifying a particular vessel, the contract bears no direct link to a vessel.

Id. (citing J.A.R., Inc. v.. M/V Lady Lucille, 963 F.2d 96, 98 (5th Cir. 1992)).

Judge Zainey also cited Buck Kreihs Co. v. Bd. of Comm'rs, No. 97-970, 1997 WL 666220 (E.D. La. Oct. 27, 1997), in which Judge Vance of this court also held that maritime jurisdiction did not exist in a case involving the lease of wharf space.

> Buck Kreihs involved a ship repair business that leased a wharf on the Mississippi River. The lessor allegedly breached a provision in the contract that required trash removal in and around the river water near the wharf. The court held that lease of wharf space that does not refer to a specific vessel is not a maritime contract. The court further noted that a contractual dispute does not transform into a maritime action simply because the work performed by the lessor (ship repair) is maritime in nature.

Jaspriza, 2010 WL 4879442, at *2 (citing Buck Kreihs Co., 1997 WL 666220, at *3).

"In sum, the lease of a dock is not a maritime contract unless the contract specifies a particular vessel." Id.  Just as in the instant case, the landowner/lessor in Jaspriza "did not agree to render services upon any of [lessee's] vessels," id. at *3, and "[t]he lease applied to a strip of land and dock space that bordered a canal, not to the service of a vessel in navigation." Id. at *4.  The lease between Pitre and Constantin regarding the Texaco Dock property does not specify a particular vessel and lacks the necessary direct link to maritime commerce to be a maritime contract.

The Sixth Circuit's opinion in New Hampshire Insurance also supports a finding that the lease here is not a maritime contract.  The Sixth Circuit held that a general liability insurance policy, which covered "a yacht dealer and marina operator . . . against loss or damage to its inventory, loss or damage to third-party property while in its custody, personal injury or property damage occurring on its boats or at its marina, and loss or damage to its tools and equipment" and also provided "Truth in Lending Errors and Omissions Liability Coverage," was not a maritime contract "because its 'primary objective' does not relate to 'maritime commerce.'" N.H. Ins. Co., 581 F.3d at 422, 427 (emphasis added).  The appeals court emphasized that Kirby requires a functional focus on the contract terms, and quoted Pier 39 Ltd. P'ship, 738 F.2d at 1036, in which the Ninth Circuit stated:  "'For an insurance policy to be within admiralty jurisdiction, the interests insured, and not simply the risks insured against, must be maritime.  For

27

example, a beach front home might be insured against damage from "perils of the sea," but insurance of this sort on real property almost certainly is outside admiralty jurisdiction.'" N.H. Ins. Co., 581 F.3d at 427.  "Geography, then, is useful in a conceptual inquiry only in a limited sense:  If a [contract's] sea components are insubstantial, then the [contract] is not a maritime contract." Kirby, 543 U.S. at 27.  In the instant case, the functional focus of the contract is to provide the terms for a long-term lease of immovable property.  The "sea components" of the lease, consisting only of the lessee's obligations to keep the bulkhead in good repair and comply with all governmental navigation rules and the lessee's right to dredge the waterways, are insubstantial in comparison to the other terms.

Finally, the district court in Euclid Energy Ltd. v. SIA Ventall Terminals, 598 F. Supp. 2d 454 (S.D.N.Y. 2009), held that it did not have admiralty jurisdiction over "a lease-and-services contract . . . related to terminal facilities and services . . . in or near [a] port . . . .  The express purpose of the lease was to provide [plaintiff] Euclid with a facility where gasoline . . . could be upgraded so that it could be exported to [other] countries . . . ." Id. at 455.  The complaint alleged that "Euclid rented storage space at the terminal 'for the purposes of export by sea' and that Euclid 'regularly brought vessels into the terminal for loading of oil and other gasoline products' . . . .  [T]he finished product, ready for export–is moved by ship.  It is loaded onto those ships at docks

adjacent to the leased facility, and the **lease gives Euclid the right to tie up at those docks for the purpose of receiving product**." Id. at 455-56 (bold emphasis added; underlined emphasis in original).

The court ruled that the contract was merely "a lease for facilities where the oil can be treated so that it can be sent on to plaintiff's customers, and for services relating to that treatment." Id. at 456.  Plaintiff's argument that "the gasoline will ultimately end up being transported in maritime commerce (i.e., on ships)" did not establish that the contract was a maritime one, and maritime jurisdiction did not exist "simply because the product that would have been stored and treated in the leased premises would eventually find its way onto a ship." Id.

> Nothing in Kirby suggests that the Supreme Court ever thought about whether a claim for breach of a non-transportation contract between two foreign corporations fell within the admiralty jurisdiction of the United States simply because goods that were the subject of that contract would eventually have ended up on ships, for carriage . . . .
>
> [T]here is nothing about the nature and character of the contract between the parties that is maritime in nature. . . . Furthermore, the primary object of the contract is not [to] accomplish the transportation of goods by sea. . . .  The fact that Euclid uses ships to transport its finished product to at least some of its ultimate customers does not transform the lease-and-services contract here at issue into a maritime contract.

Id. at 457 (footnote omitted); see also Pier 39 Ltd. P'ship, 738 F.2d at 1037-38 (citing Upper Steamboat Co. v. Blake, 2 App. D.C. 51, 1893 WL 11522 (App. D.C. 1893); Transmarine Corp. v. Fore River Coal Co., 28 F.2d 624 (D. Mass. 1928); The James T.

Furber, 157 F. 126 (D. Me. 1907); The Cimbria, 156 F. 378 (D. Mass. 1907); G. Robinson, Handbook of Admiralty Law 180 (1939)) ("If there is no connection to a specific vessel, however, contracts relating to wharves generally are not within admiralty jurisdiction. A contract to lease a wharf, for example, is not within the jurisdiction if the lease is not tied to services to a specific vessel . . . ."). Similarly, the mere presence of a dock and its use by Pitre's customers on the leased property do not transform the ground lease into a maritime contract.

Based on these authorities, I find that the lease of the Texaco Dock property is not a maritime contract and this court does not have maritime jurisdiction over the claims arising out of that lease, whether the claims are asserted in Pitre's or Constantin's counterclaim. For essentially the same reasons, the allegations of Pitre's counterclaim do not establish that the other contracts on which Pitre bases its jurisdiction argument are maritime contracts. The court therefore has only supplemental jurisdiction over these counterclaims. 28 U.S.C. § 1367(a).

2.    Constantin asserts a maritime tort claim.

Constantin alleged in its original and amended complaint against EPIC and its counterclaim against Pitre that these parties trespassed on and caused physical damage to the Texaco Dock property, including an allegation that EPIC's " vessels and their crew negligently made use of and struck bulkheads and pilings during navigation and/or while

30

docking." Amended Complaint, Record Doc. No. 17, ¶ 5(C).  Pitre contends that damage

to the dock is a maritime tort within the jurisdictional scope of 28 U.S.C. § 1333 and the

Admiralty Extension Act.

Section 1333 confers on federal courts "original jurisdiction, exclusive of the

courts of the States, of:  (1) Any civil case of admiralty or maritime jurisdiction, saving

to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C.

§ 1333(1).  The Admiralty Extension Act provides in relevant part:  "The admiralty and

maritime jurisdiction of the United States extends to and includes cases of injury or

damage, to person or property, caused by a vessel on navigable waters, even though the

injury or damage is done or consummated on land."  46 U.S.C. § 30101(a).

However, Pitre cannot rely on plaintiff's assertion of a maritime tort in its <u>state</u>

<u>court</u> petition and amended complaint to establish admiralty jurisdiction in this removed

case.

> [E]ven though federal courts have original jurisdiction over maritime
> claims under 28 U.S.C. § 1333, they do not have removal jurisdiction over
> maritime cases which are brought in state court.  Instead, such lawsuits are
> exempt from removal by the "saving-to-suitors" clause of the jurisdictional
> statute governing admiralty claims, and therefore may only be removed
> when original jurisdiction is based on another jurisdictional grant, such as
> diversity of citizenship.

<u>Barker</u>, 706 F.3d at 690-91 (citing <u>Romero v. Int'l Terminal Operating Co.</u>, 358 U.S.

354, 377-79 (1959); <u>In re Dutile</u>, 935 F.2d 61, 63 (5th Cir. 1991)).  Thus, "admiralty

jurisdiction is not present in this suit because [plaintiff] filed in state court, therefore invoking the saving-to-suitors exception to original admiralty jurisdiction." Id. at 694 (citing 28 U.S.C. § 1333; Romero, 358 U.S. at 378).

Pitre's counterclaim against Constantin does not include any allegations that could be construed as a maritime tort.  However, Constantin alleges in its counterclaim that Pitre is liable for any "physical property damage to the Texaco Dock caused by Pitre or any third parties to which it allowed access."  Record Doc. No. 54 at p. 2.  Although Constantin does not assert any jurisdictional basis in its counterclaim, its factual allegations against Pitre arguably include a maritime tort of property damage caused by vessels in navigation.

The standards for a maritime tort are broader than those for a maritime contract. Barker, 706 F.3d at 687.

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity.  A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water.  46 U.S.C. App. § 740 [now 46 U.S.C. § 30101].  The connection test raises two issues.  A court, first, must assess the general features of the type of incident involved, to determine whether the incident has a potentially disruptive impact on maritime commerce.  Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)

(quotations omitted); accord Barker, 706 F.3d at 687.

> Docking a vessel at a marina on a navigable waterway is a common, if not indispensable, maritime activity. At such a marina, vessels are stored for an extended period, docked to obtain fuel or supplies, and moved into and out of navigation. Indeed, most maritime voyages begin and end with the docking of the craft at a marina. We therefore conclude that, just as navigation, storing and maintaining a vessel at a marina on a navigable waterway is substantially related to traditional maritime activity.

Sisson v. Ruby, 497 U.S. 358, 367 (1990); see also Barker, 706 F.3d at 688-89 (citing

Coats v. Penrod Drilling Corp., 61 F.3d 1113, 1119 (5th Cir. 1995)) ("incidents on jack-

up rigs docked at marinas are maritime in nature"); Sulphur Terminals Co. v. Pelican

Marine Carriers, Inc., 281 F. Supp. 570, 572, 575 (E.D. La. 1968) (court has jurisdiction

under Admiralty Extension Act when defendant's vessel came into contact with piling

cluster and moved shoreward, pushing piling cluster into dock walkway and shoreward);

Shell Oil Co. v. S. S. Tynemouth, 211 F. Supp. 908, 909-10 (E.D. La. 1962) (court had

jurisdiction under Admiralty Extension Act in action by lessee to recover damages

caused by defendant's vessel's collision with lessor's dock, across which lessee's

pipelines ran from shore to tankers in navigable river).

Under these standards, Constantin's allegation that Pitre is liable for physical

damage to plaintiff's dock caused by vessels that Pitre allowed to use the dock satisfies

the location and connection tests.  Constantin asserts an injury suffered on land caused

by a vessel on navigable water. The type of incident involved, the docking of commercial vessels, has a potentially disruptive impact on maritime commerce and the general character of this activity shows a substantial relationship to traditional maritime activity. Therefore, Constantin asserts a maritime tort claim as to which this court has admiralty jurisdiction.

> 3.   The court is not required to retain jurisdiction of the maritime tort claim.

This court is not required to retain jurisdiction over the maritime tort counterclaim when it has remanded the main claim and the third-party demand to state court. Even if a counterclaim has an independent basis of jurisdiction, the court has discretion whether to retain jurisdiction over the counterclaim when the main claim has been dismissed or remanded because of lack of subject matter jurisdiction.

In McLaughlin v. Miss. Power Co., 376 F.3d 344 (5th Cir. 2004), plaintiff sued in federal court on the basis of diversity jurisdiction. After the court found that diversity did not exist, plaintiff contended that the court could have exercised supplemental jurisdiction over plaintiff's state-law claims, rather than dismissing them, because the court had federal question jurisdiction over defendants' counterclaim. The Fifth Circuit held:

> If an independent jurisdictional ground exists for a counterclaim, the district court can retain jurisdiction over the counterclaim even if the original claims are dismissed for lack of subject-matter jurisdiction.

34

> Moreover, <u>if</u> the district court retains jurisdiction over the counterclaim, it may permit the dismissed claims to be asserted as counterclaims to the retained claim.

<u>Id.</u> at 355 (emphasis added); <u>see also</u> <u>Kuehne & Nagel (AG & Co) v. Geosource, Inc.</u>, 874 F.2d 283, 291 (5th Cir. 1989), <u>abrogated in part on other grounds by</u> <u>Norfolk S. Ry. Co. v. Kirby</u>, 543 U.S. 14, 26 (2004)) ("if a compulsory counterclaim rests on an independent ground of federal jurisdiction, it <u>may</u> be adjudicated despite the dismissal of the plaintiff's complaint") (emphasis added); <u>accord</u> <u>HSC Hospitality, Inc. v. Sun Life Assur. Co.</u>, 34 F. App'x 150, 2002 WL 494415, at *2 n.1 (5th Cir. Mar. 14, 2002) (quoting <u>Kuehne & Nagel</u>, 874 F.2d at 291); <u>Constant v. Webre</u>, No. 07-3042, 2008 WL 4330251, at *2 (E.D. La. Sept. 15, 2008) (citing <u>McLaughlin</u>, 376 F.3d at 355; <u>Kuehne & Nagel</u>, 874 F.2d at 291).

The language emphasized above in the Fifth Circuit's <u>McLaughlin</u> and <u>Kuehne & Nagel</u> opinions indicates that the district court has discretion whether to retain a counterclaim that has an independent basis for jurisdiction when the original claim has been dismissed for lack of jurisdiction.  In cases that were removed from state court, other federal courts have held that retention of a counterclaim is also discretionary when the removed complaint was remanded for lack of subject matter jurisdiction.

> [T]here is simply no authority to support [defendant] Empire's assertion that the Court must at least retain jurisdiction over the ERISA counterclaims. <u>Kuehne & Nagel v. Geosource, Inc.</u>, 874 F.2d 283 (5th Cir. 1989), which Empire cites, merely held that the court has **discretion** to

adjudicate a compulsory counterclaim which rests on an independent ground of federal jurisdiction, notwithstanding the dismissal (not the remand) of plaintiff's complaint for lack of subject matter jurisdiction. See also 6 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1414 at 113-14 (2d ed. 1990) (noting that court may adjudicate compulsory counterclaim presenting independent basis of federal jurisdiction despite dismissal of plaintiff's claim due to lack of federal jurisdiction).

Mem. Hosp. v. Empire Blue Cross & Blue Shield, No. 93 CIV. 6682, 1994 WL 132151, at *5 (S.D.N.Y. Apr. 12, 1994) (underlined emphasis in original; bold emphasis added); see also Columbia Gas Transm. Corp. v. Drain, 191 F.3d 552, 559 (4th Cir. 1999) (citing Toste Farm Corp. v. Hadbury, Inc., 70 F.3d 640, 646 (1st Cir. 1995); Kuehne & Nagel, 874 F.2d at 291; Rengo Co. v. Molins Mach. Co., 657 F.2d 535, 539 (3d Cir. 1981)) ("We recognize that it is the usual rule that a district court may exercise jurisdiction over a compulsory counterclaim after the original claim has been dismissed for lack of jurisdiction if the counterclaim has an independent basis for jurisdiction.") (emphasis added); Fed. Dep. Ins. Corp. v. Elefant, 790 F.2d 661, 667 (7th Cir. 1986) (district court that lacked subject matter jurisdiction must remand plaintiff's suit to state court, "even though it may retain [defendant's post-removal] maritime [counterclaim]") (emphasis added); Mfrs. Cas. Ins. Co. v. Arapahoe Drilling Co., 267 F.2d 5, 7-8 (10th Cir. 1959) ("And indeed it seems well settled that where a jurisdictional basis exists for a counterclaim it may sometimes be considered though the complaint fail for want of jurisdiction.") (emphasis added).

36

In cases of removal, the United States Court of Appeals for the Ninth Circuit has held that the district court correctly "concluded that the pleading of a federal counterclaim was insufficient to create removal jurisdiction in the federal court" and that the district court properly remanded defendant's federal question counterclaim, which had been asserted after removal, to the state court along with plaintiff's state law claims over which the court lacked subject matter jurisdiction. Crowe v. Lucky Stores, Inc., 9 F. App'x 741, 743 n.1 (9th Cir. 2001) (citing Takeda v. Nw. Nat'l Life Ins. Co., 765 F.2d 815, 821 (9th Cir. 1985); Mem. Hosp., 1994 WL 132151, at *4).

Based on these authorities, I find that the court has discretion whether to maintain jurisdiction over Constantin's maritime tort counterclaim. The cited cases do not describe what factors a district court should address when exercising its discretion. I will apply to the maritime tort claim the same statutory factors set forth in 28 U.S.C. § 1367(c) (to the extent they can be applied) and the common law factors of judicial economy, convenience, fairness and comity that apply to the remainder of the counterclaims between Pitre and Constantin, which are based only on the court's supplemental jurisdiction. Enochs v. Lampasas Cnty., 641 F.3d 155, 159 (5th Cir. 2011) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

Accordingly, I next consider whether the court should retain jurisdiction over the counterclaims that enjoy either supplemental or maritime jurisdiction.

H.     Remand Is Appropriate Under the Supplemental Jurisdiction Factors

In the absence of an independent basis of federal subject matter jurisdiction for the counterclaims between Pitre and Constantin, except Constantin's maritime tort claim, the only basis for jurisdiction over these state law claims is supplemental jurisdiction under 28 U.S.C. § 1367.   "[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  A district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  Id. § 1367(c)(3).  The same considerations apply when the original complaint is remanded to state court, rather than dismissed.  Enochs, 641 F.3d at 159.

The court's determination whether to decline to exercise supplemental jurisdiction is guided by "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity that the Supreme Court outlined in Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350-51 (1988), and United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)."  Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir. 1999); accord Enochs, 641 F.3d at 159; Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc., 554 F.3d 595, 602 (5th Cir. 2009).

The statutory considerations in favor of declining jurisdiction are whether

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Although the Fifth Circuit's

"general rule" is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial, this rule is neither mandatory nor absolute.  Thus, while the district court's dismissal of the [plaintiff's] federal claims provides a powerful reason to choose not to continue to exercise jurisdiction, no single factor is dispositive in this analysis.

Batiste, 179 F.3d at 227 (quotations and citations omitted); accord Enochs, 641 F.3d at

161; Brookshire Bros., 554 F.3d at 602.  The district court must make its decision "in

light of the specific circumstances of the case at bar."  Id. (citation omitted).  The Fifth

Circuit's

case law is clear that when a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and remands a suit after investing a significant amount of judicial resources in the litigation analogous to that invested by the district court in this case [during more than 3 years of litigation, the court had decided 41 dispositive motions, 14 Daubert motions and 7 other motions in limine; discovery was closed; and the parties were making final preparations for

their fourth trial setting], that court has abused its discretion under 28
U.S.C. § 1367.

Id.

In the instant case, all of the parties' state law claims have been remanded to the
state court, leaving only one claim of a maritime tort over which the court has
jurisdiction.  None of the state law claims raises a novel or complex issue of state law,
but the state law contract claims substantially predominate over the maritime tort claim.
Plaintiff's claim of damage to the dock appears to be a minor portion of the numerous
claims and counterclaims between the parties arising out of their contractual or other
relationships.  The balance of the statutory factors therefore favors declining to exercise
supplemental jurisdiction.

The factors of judicial economy, convenience, fairness and comity also weigh in
favor of declining jurisdiction over the state law claims and the remaining maritime tort
claim.  First, as noted, only one federal maritime tort claim remains in the case and it is
a relatively minor part of the overall action.  The state courts have concurrent jurisdiction
over that claim, as evidenced by Constantin's initial filing of its property damage claim
against EPIC in state court under the "saving to suitors" clause of 28 U.S.C. § 1333.

Second, comity favors letting the state court handle the state law and maritime
claims because of Louisiana's general interest in adjudicating the claims of its citizens
brought under its laws.  Louisiana also has a specific interest in the lawsuits between the

parties that are already pending in state court over the same issues and relationships as in the instant case.

Third, this court has never addressed the merits of any of the claims. Although this action has been pending for more than a year, the proceedings to date in this court have for the most part involved the filing of amended pleadings, the joinder of parties and assertion of counterclaims, and the jurisdictional issues that the court recently raised and has addressed in this opinion. The original case was improperly removed to this court because the allegation of federal diversity jurisdiction at that time was erroneous. EPIC's third-party complaint was filed in late October 2012. Pitre's consent to a magistrate judge's jurisdiction under 28 U.S.C. § 636(c) was not entered until January 3, 2013. Pitre filed its answer and counterclaims on January 10, 2013, and EPIC filed its answer on January 30, 2013, which is less than three months ago. Constantin filed its counterclaim and its motion to dismiss, motion for more definite statement and motion to strike Pitre's counterclaims less than two months ago. The court has not yet ruled and will not need to rule on Constantin's motion if the case is remanded. After remand, the parties will be able to use in the state court proceedings the discovery that they have undertaken here. Judicial economy therefore does not weigh in favor of maintaining jurisdiction.

Finally, fairness and convenience are equal whether the claims are brought in state or federal court.  Accordingly, the court remands this entire action to the state court.

III.    THE PENDING MOTION

Because the court has determined sua sponte that all claims must be remanded to state court, **IT IS ORDERED** that Constantin's motion to dismiss, for a more definite statement and to strike Pitre's counterclaims, Record Doc. No. 48, is DISMISSED AS MOOT.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that this matter is remanded to state court.  The Clerk of Court is directed to mail a certified copy of this order to the clerk of the Seventeenth Judicial District Court for the Parish of Lafourche, State of Louisiana.


New Orleans, Louisiana, this ____27th____ day of March, 2013.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

42